**Kenneth PRINCE, Appellant,**

v.

**John FIRMIN, et al., Appellees.**

**No. 92–CV–743.**

District of Columbia Court of Appeals.

Argued March 17, 1993.
Decided April 23, 1993.

---

Jeffrey Nadel, Silver Spring, MD, with whom Edmund H. Feldman, Washington, DC, was on the brief, for appellant.

Louis P. Robbins, Washington, DC, with whom John E. Prominski, Jr., Fairfax, VA, was on the brief, for appellees.

Before FERREN, STEADMAN and KING, Associate Judges.

1. Originally, two of the six church trustees were plaintiffs in the suit and four were defendants. At some point after *Prince I,* one of the plaintiffs resigned as trustee and withdrew from the lawsuit, leaving Mr. Prince as the sole plaintiff.

2. The largest distributions were to the American Baptist Convention, the Southern Baptist Convention, the D.C. Baptist Convention, the Montgomery–Hills Baptist Church, the Thomas Memorial Baptist Church, and four scholarships in

STEADMAN, Associate Judge:

This case is before us for a second time and again requires a ruling on an obscure section of our statutory law dealing with the dissolution of certain religious societies. That section, D.C.Code § 29–911 (1991), reads:

> Upon the dissolution of any society or congregation the estate and property of such society or congregation shall revert back to the persons, their heirs, and assigns who may have given or contributed to the purchase of or payment for the same, according to their respective rights.

In *Prince v. Firmin,* 584 A.2d 8 (D.C.1990) (*"Prince I"*) we held that the provision was constitutional. In this second appeal, the issue is whether a religious society whose members have decided to terminate its existence but are still active in making decisions concerning termination is "dissolved" and thus bound to transfer its property only pursuant to § 29–911. We hold that the statute is not yet applicable under such circumstances, and accordingly affirm the trial court's grant of summary judgment in the proceeding below.

The material facts relating to this controversy and the historical background of § 29–911 were set forth in *Prince I* and need not be repeated here at length.[1] Briefly put, during a series of membership meetings in 1986 and 1987, the members of the Bethany Baptist Church of Washington, D.C. decided to sell the church building, cease active worship services, and distribute the church assets pursuant to various resolutions adopted by the membership.[2] At this point in the litigation, the only remaining issue is whether these distributions are in violation of the provisions of § 29–911.[3] Appellant suggests that the

the names of former pastors. The trustees of the Church continue to hold $142,000 in assets pending the outcome of this litigation to be distributed pursuant to the membership's resolutions.

3. As we noted in *Prince I,* "appellants have abandoned any claims set forth in their complaint or relief sought thereunder except insofar as such claims or relief may be founded upon the provisions of section 29–911." 584 A.2d at 10.

question of "dissolution" within the meaning of § 29–911 is a question of fact not properly resolved on summary judgment. On the contrary, because the pertinent underlying facts of this case are not in dispute, the question of whether § 29–911 is applicable is a matter of interpreting the statute and its phrase "upon dissolution," clearly a matter of law. *See Davis v. United States*, 564 A.2d 31, 35–36 (D.C.1989) (en banc).

Appellant interprets the statute to apply as soon as a religious society makes its initial decision to wind up its existence, asserting that dissolution within the meaning of the statute is a continuing process. We think this is too expansive a reading of the statute. As we expounded in *Prince I,* § 29–911 derives from a statute that was enacted over a hundred years ago and was of a type once common to corporate law generally. 584 A.2d at 11 & n. 5. Such provisions were necessary to prevent a lacuna in the ownership of property that was previously owned by a corporation, an artificial legal entity, once the corporation no longer existed. We quoted BLACKSTONE to the effect that lands and tenements owned by the corporation reverted to the grantor "because the cause of the grant faileth." *Id.* at 12 (citing 1 WILLIAM BLACKSTONE, COMMENTARIES *472). We also took note of a Supreme Court decision which compared the situation of a dissolved corporation to that "of a man dying without heirs." *Id.* at 12 (citing *Late Corp. of the Church of Jesus Christ of Latter–Day Saints v. United States*, 136 U.S. 1, 47, 10 S.Ct. 792, 804, 34 L.Ed. 478 (1890)). Section 29–911, like a law of intestate succession, thus fills the gap and answers the question of who has the right to ownership and possession of property once the corporation, the artifi-

cial legal entity, is no longer itself in existence to assert such ownership.

This was precisely the situation facing the court in the only other case involving § 29–911, *Rose Campbell Mission v. Richardson*, 64 App.D.C. 21, 73 F.2d 661 (1934) (per curiam). There, the property in dispute was a lot which had been conveyed in 1912 to "Rose Campbell Mission of Reno." The following year a document was recorded showing the election of Rose Campbell[4] and seven others as trustees of the mission. The mission had no constitution, by-laws, rules or regulations and its work was entirely discontinued at Rose Campbell's death in 1915. In 1931, the District condemned the property and a dispute arose over the distribution of the condemnation proceeds.

The court held that the real estate reverted to the heirs of Rose Campbell. It noted that whatever the original purposes of the society may have been, it was altogether abandoned at Rose Campbell's death; that for seventeen years the society was wholly disbanded and did not conduct any activities and that, for those seventeen years, there had been no religious society or collective body doing or sustaining the work of the mission. The court concluded that a "purely voluntary association, unincorporated and unorganized, cannot be said to have an existence after definitely abandoning the purpose of the creation and ceasing to exercise its function." 64 App. D.C. at 23, 73 F.2d at 663.

Here, on the other hand, in determining the transfer of its assets, the religious society was clearly an existing corporate entity, even though regular worship services had ceased. Its constitution and by-laws contained a broad definition of the objects of the church[5] and the membership and

There, we upheld the statute against general constitutional attack, but left open "any questions involving the interpretation, scope, or practical application of section 29–911." *Id.* at 12 n. 6.

4. The opinion refers to both "Rose" and "Rosa" Campbell, but all references are to the same individual. For consistency, we use only the name "Rose."

5. For example, Article II states the objects to be "the maintenance of the worship of God; [ ] the study and practice of the Christ Life as revealed and taught in the New Testament; [and] the promotion and advancement of Christ's Kingdom throughout the world." Article III requires that all members engage "to strive for the advancement of the Church, to promote its prosperity and spirituality, to sustain its worship, discipline and doctrines, to contribute cheerfully and regularly to the support of the ministry,

trustees were, in their actions of disbursing church assets, acting pursuant thereto.[6] The trustees who currently hold the remaining assets of the society are continuing to act in their capacity as designated trustees of the Church and are entrusted with the task of disbursing the funds in accordance with the previously adopted instructions of the membership. Thus, no situation involving a gap in ownership presents itself for the application of § 29–911's provision designating the ownership of

the expenses of the Church, the relief of the poor, and the spread of the gospel throughout the world."

6. As already mentioned, no claim is now made that any of the transfers were ultra vires other

property to ensue "upon dissolution" of the society.

Accordingly, the trial court's grant of summary judgment is

*Affirmed.*

than appellant's argument with respect to the general applicability of § 29–911.